UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-24081-CV-SCOLA/GOODMAN

YOCASTA MOMPIE,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Yocasta Mompie ("Mompie") and Defendant Kilolo Kijakazi,[1] Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 18; 19]. The Commissioner's summary judgment motion also served as her opposition response to Mompie's motion. [ECF No. 19]. Mompie filed a response to the Commissioner's motion, which was also her reply. [ECF No. 21].[2] The Commissioner did

_____

[1]    Plaintiff's suit was brought against Kilolo Kijakazi, the Acting Commissioner at the time of filing. Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley should be substituted for Kilolo Kijakazi as the suit's Defendant.

[2]    Plaintiff's reply appears to have been filed twice at ECF Nos. 20 and 21. In this Report and Recommendations, the Undersigned will cite to only the last-filed reply [ECF No. 21].

not file an optional reply.

According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Mompie's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

## I.      Procedural Background

On July 2, 2020, Mompie applied for disability insurance benefits, asserting a disability with an alleged onset date of February 17, 2019. (R. 175, 200).[3] She alleges disability due to diabetes, neuropathy, ocular migraine, eye impairment, early glaucoma, cataracts, high blood pressure, cholesterol, and sleep apnea. (R. 200). After a hearing on December 1, 2020 (R. 48–82), Administrative Law Judge Sylvia H. Alonso (the "ALJ") concluded that Mompie was not disabled. (R. 28–47). The Appeals Council denied review of the ALJ's decision. (R. 3–8; 173). The Commissioner's final decision is now subject to review.

## II.     Factual Background

Mompie was 54 years old on her alleged onset date of February 17, 2019. (R. 175;

---

[3]     Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 9].

179). She received vocational training and attended a vocational high school. (R. 56). After completing high school, she attended some college classes but did not graduate. *Id.* For 20 years, she worked in a call center as a contract representative for the Social Security Administration ("SSA"), answering calls to the SSA. (R. 56–57).

At the administrative hearing, the following exchange took place concerning Mompie's right to representation:

> ALJ: Okay. Thank you. So, I have pending before me your application for disability insurance benefits under Title II of the Social Security Act. Your claim was denied on initial review and you disagreed with that unfavorable decision. As a result, you requested this hearing before an administrative law judge. Please understand that the prior decision is not binding on me. I will make a new decision based on all of the evidence before me.
>
> That evidence includes all documents entered into the record as well as your testimony, the Social Security Act, and the regulations. **I note that you are not represented by an attorney or other qualified individual, but the record shows that you were advised of your rights to representation, and that you understood those rights**. Is that correct?
>
> **CLMT: Yes**.
>
> **ALJ: Okay. So, you're prepared to proceed today without a representative?**
>
> **CLMT: Yes, I believe so.**

(R. 52 (emphasis added)).

Mompie told the ALJ that she lived with her husband. (R. 55). She stated that there were weeks she did not leave her house. *Id.* She had a driver's license and drove approximately three times per month, provided it was daytime and there was no traffic.

(R. 55–56).

She would independently take care of herself, purchase food at the grocery store, do laundry on a weekly basis, and clean her bathroom. (R. 70). However, a neighbor would take out the trash for her. (R. 70–71).

Although she received some accommodation at work, she eventually had to stop working due to blurred vision: "I just see stars, floaters coming through, and it didn't . . . permit me to see clearly the information that I needed." (R. 59). Despite her vision problems, she was able to use a cell phone, with the large fonts setting. (R. 66). However, she stated she was unable to use the computer "because of [ ] blurriness and sensitivity to [ ] light." *Id.*

She testified that she had a Facebook account to let her family know how she was doing. (R. 68–69). She also testified that although she told the SSA in a telephone interview that she did crafts, she had not sewn in approximately two or three years and could no longer "find the hole in the needle." (R. 69).

In October 2021, Mompie had cataract surgery. (R. 58–59).[4] She stated that the surgery "helped, but it[] [was] not . . . perfect" and that she was still seeing "long streaks" and that she had to have laser treatment. (R. 59).

She also experienced anxiety and depression but was not receiving any mental

---

[4]     Mompie's cataract surgery was approximately two months before the December 8, 2021 administrative hearing.

health treatment, other than being "given some pills and stuff" by her primary care physician and going to church counseling. (R. 64). She testified that her anxiety and depression worsened when she and her husband contracted COVID-19 in November 2021. (R. 63–65).

The ALJ asked Mompie what conditions were affecting her ability to work. (R. 71). Mompie cited her depression, anxiety, diabetic retinopathy, severe cataracts, diabetes, and neuropathy (which caused sharp pain in her hands and feet). (R. 71–72). Additionally, she told the ALJ that being in a sitting position "affected" her back and neck. (R. 72).

The ALJ also heard testimony from the vocational expert ("VE"). (R. 73–80). Plaintiff did not object to the VE's qualifications and stipulated that he was qualified to testify as a vocational expert. (R. 74).

The VE classified Plaintiff's past work as "an insurance customer service representative, DOT number 205.567-010," semiskilled, with a sedentary exertional level and an SVP of 4. (R. 75).

The ALJ posed the following hypothetical to the VE:

Assume a hypothetical individual of the same age, education, and work experience as the Claimant. Further, assume I find this person capable of performing the full range of medium work with the following addition [sic] limitations. Can stand and walk for six hours in an eight-hour day. Can sit for six hours in an eight-hour day.

Can frequently climb ramps and stairs. Occasionally ladders, ropes, and scaffolds. Can tolerate occasional exposure to extreme cold, heat, wetness,

and humidity. Occasional exposure to fumes, dusts, and gases. Can tolerate a moderate noise level such as that found in an indoor office or retail setting. And occasional exposure to hazards. Can the hypothetical individual perform past work?

*Id.*

The VE testified that this hypothetical individual could perform Plaintiff's past work. *Id.* He also testified that this hypothetical individual could perform work in the following representative occupations:

hand packager, DOT number 920.587-018. The SVP is 2, which is unskilled. The exertional level is medium. It's estimated that there are 77,000 of such jobs nationally. A second example is a sandwich maker, DOT number 317.664-010. The SVP is 2. The exertional level is medium. It's estimated that there are 43,000 of such jobs nationally. A third example is a hospital cleaner, DOT number 323.687-010. The SVP is 2. The exertional level is medium. It's estimated that there are 48,000 of such jobs nationally.

(R. 76).

The ALJ added additional limitations and the VE testified that both past work and the aforementioned representative occupations would still be available to the hypothetical individual:

Q    Okay. And if the hypothetical individual has sufficient vision to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles, would past work remain?

A    In my opinion, yes, Your Honor.

Q    Okay. And would the alternative jobs that you provided remain?

A    Yes, Your Honor.

Q    Okay. If I added the additional limitation of has sufficient vision to view a computer and determine the size and shape of small objects such as

6

nuts, bolts, and screws, would the alternative jobs that you provided remain?

A    Yes, Your Honor.

Q    And would past work remain?

A    Yes, Your Honor.

**Q    Okay. And if the hypothetical individual could frequently view a computer monitor, would past work remain?**

**A    Yes, Your Honor. In my opinion, yes, Your Honor.**

(R. 76–77 (emphasis added)).

However, when the ALJ asked if this hypothetical individual could only "occasionally" view a computer monitor, the VE testified that this individual could not perform Plaintiff's past work because "the vision would have to be constant." (R. 77). Upon the ALJ's request for clarification, the VE stated that "**[t]he near acuity vision is frequent, frequent for past-relevant work, and the hypothetical posed to [him] [was] that -- [his] response [was] that [the] second individual could perform past-relevant work, and that it[ ][was] frequent** and not constant." *Id.* (emphasis added). **But if the vision requirement was "occasional" then past-relevant work would not be available to this hypothetical individual.** *Id.*

Concerning the representative occupations, the VE testified that:

For the hand packager, near acuity is occasional. for the sandwich maker, near acuity is constant. So, if the individual's limitation for vision is occasional, the individual would not be able to do that job. And for the hospital cleaner, just a moment, please. The near acuity physical demand is

not present, meaning that it is not a significant part of the job.

(R. 77–78).

The ALJ then asked the VE to provide another representative occupation instead of sandwich maker. (R. 78). The VE testified that "[a]nother job is kitchen helper, DOT number 318.687-010" with an SVP of 2, unskilled, and a medium exertional level, of which there were an estimated 107,000 jobs nationally and "[t]he near acuity requirement [was] not present, meaning that it [was] not a significant part of the job requirement." *Id.*

In response, the VE posed an additional hypothetical:

So, if I took it down to light and the hypothetical individual same postural as before, can stand and walk for six hours in an eight-hour day. Can sit for six hours in an eight-hour day. Can frequently climb ramps and stairs. Occasionally ladders, ropes, and scaffolds. Can tolerate occasional exposure to extreme cold, heat, wetness, and humidity.

Can tolerate occasional exposure to fumes, dusts, and gases. Can tolerate a moderate noise level such as that found in an indoor office or retail setting. Can tolerate occasional exposure to hazards and have sufficient vision to avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, approaching people or vehicles. Would past work remain?

*Id.* The VE testified that this individual would be able to perform Plaintiff's past work. (R. 79).

The ALJ again clarified with the VE that if the near acuity was frequent, then this individual could perform past-relevant work, but if the near acuity was occasional, then past-relevant work was not available to this individual:

Q      Okay. And, I guess, just as you had indicated before, **if I added the additional limitation of frequent near acuity, past work would remain?**

A      I'm just going to --

Q      Doublecheck, that's fine.

A      -- check. **Yes, Your Honor. Near acuity is frequent.**

Q      Okay. So, i**f I took it down to occasional, then past work would not remain? But with frequent it would remain?**

A      **That's correct, Your Honor**.

Q      Both as actually performed and as generally performed in the national economy?

A      That's correct, Your Honor.

*Id.* (emphasis added).

The VE further opined that if the hypothetical individual was off task greater than ten percent of the workday, then past work would not be available to him or her. (R. 80). Concerning absenteeism, the VE testified that "[a]ssuming an individual earns [eight] to 12 days of leave, sick leave, and/or annual leave per year, that would be the limitation for absenteeism for related purposes. Anything in excess of that would not be tolerated or consistent with leave policies." *Id.* at 80.

The VE testified that the basis for his opinion was his "education and experience in the public and private sectors" and "source documents, including the DOT and the SCO as reference documents to obtain additional information regarding the characteristics of the jobs cited in response to the hypothetical." (R. 79–80). Plaintiff did not have any questions for the VE. (R. 80–81).

### III.     Applicable Legal Standards

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1.      **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2.      **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3.      **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine the claimant's residual functional capacity ("RFC"); and then determine:

4.      **Step four**. Based on the RFC, can the claimant perform his or her past-relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past-relevant work, then an ALJ must finally determine:

5.      **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports the ALJ's findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th

Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted).

The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV.    The ALJ's Findings

In denying Mompie's claim for benefits, the ALJ followed the sequential five-step evaluation process for social-security claims. (R. 31–42). At step one, the ALJ concluded that Mompie had engaged in substantial gainful activity between February 2019 through February 2020 but "there ha[d] been a continuous 12-month period[ ] during which [Mompie] did not engage in substantial gainful activity." (R. 34).

At step two, the ALJ concluded that Mompie had the following severe impairments: diabetes mellitus 2, hypertension, obesity, cataracts/diabetic retinopathy/macular edema, ocular migraine, and neuropathy. *Id.*

At step three, the ALJ concluded that Mompie did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 37–38). Next, the ALJ determined that Mompie had the RFC to:

> stand or walk for six hours in an eight-hour day, and she [could] sit for six hours in an eight-hour day. She frequently [could] climb ramps and stairs and occasionally [could] climb ladders, ropes or scaffolds. [She] [could] tolerate occasional exposure to extreme cold, heat, wetness, humidity, fumes, dusts, and gases. **She ha[d] sufficient vision to view a computer monitor; determine the size and shape of small objects such as nuts, bolts and screws and to avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar and approaching people or vehicles**. [She] [could] tolerate a moderate noise level such as that found in an indoor office or retail setting, and she [could] tolerate occasional exposure to hazards.

(R. 38 (emphasis added)).

At step four, the ALJ concluded that Mompie had past-relevant work as an insurance customer service representative, DOT #205.567-010, sedentary exertion, semiskilled (SVP 4)[5] and found that Mompie was able to perform this past work. (R. 42). Thus, the ALJ denied Mompie's application at step 4 and did not proceed to step 5.

---

[5] Plaintiff asserts that this is "a misstatement of [her] past relevant work" because "[t]he record consistently documents that she worked as a service representative for the Social Security Administration for 20 years, a job listed as a Claims Adjudicator (DOT #169.267-010) by the State agency." [ECF No. 18, p. 3 n.2]. But Plaintiff does not argue that this is grounds for a remand or cite any case law to support such a position. Therefore, the Undersigned will not further address this alleged misstatement in the ALJ's decision. *See Gaskey v. Colvin*, No. 4:12-CV-3833-AKK, 2014 WL 4809410, at *7 (N.D. Ala. Sept. 26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision).

In sum, the ALJ found that Mompie had not been under a disability from February 17, 2019, through the date of the ALJ's decision (March 7, 2022). *Id.*

## V.    Analysis

Mompie raises four arguments in support of remand: (1) the ALJ failed to properly assess the impact of Plaintiff's visual impairment on her ability to do work; (2) the ALJ failed to obtain a valid waiver of Plaintiff's right to counsel, which resulted in prejudice because the ALJ failed to adequately develop the record; (3) the ALJ's reasons for discrediting Plaintiff's testimony are not supported by substantial evidence; and (4) the ALJ erred in failing to include any mental limitations in Plaintiff's RFC. [ECF Nos. 18; 21]. The Commissioner maintains that the ALJ's decision is supported by substantial evidence. [R. 19]. For the reasons discussed below, the Court should **reject** Mompie's arguments.

### A.    *The ALJ's Alleged Failure to Assess the Impact of Plaintiff's Visual Impairment on Her Ability to Work*

Mompie contends that the case should be remanded because "the ALJ focused on [Plaintiff's] visual acuity and her 'near normal vision with glasses,' while her visual problems are far more complex." [ECF No. 18, p. 7]. She points out that her severe impairments of cataracts/diabetic retinopathy/macular edema and ocular migraine do not primarily impact visual acuity. *Id.*

Moreover, she asserts that, contrary to the ALJ's finding, she is unable to view a computer screen "frequently", a term the SSA defines as "occurring up to [six] hours in

an [eight]-hour workday." *Id.* at 8 (citing Social Security Ruling 83-10, 1983 WL 31251 (S.S.A. 1983)).

She argues that the medical evidence does not support the ALJ's determination that she can view a computer screen frequently during the workday and cites medical records from the Retina Group of Florida, the South Florida Retina Institute, and Eye Surgeons and Consultants documenting her diabetic retinopathy, macular edema, and cataracts. *Id.* at 8–12. These records also include reports from Plaintiff of blurred vision, flashes, floaters, and other vision problems. *Id.*

Mompie argues that:

the medical evidence documents that **[she] has consistently blurry vision, along with floaters and eye pain which would not allow her to frequently review a computer screen as the ALJ found**, warranting remand for reconsideration of her ability to perform her past relevant work. **Alternatively, to the extent this does not form the basis for a remand, the Court should remand with instructions to order a consultative ophthalmological examination**[.]

*Id.* at 12 (emphasis added).

The Commissioner states that "[s]ubstantial evidence supports the ALJ's conclusion that Plaintiff could tolerate and [sic] office job despite her vision impairment" and cites multiple eye exams in 2020 and 2021 showing Plaintiff had between 20/20 and 20/40 vision. [ECF No. 19, p. 4]. The Commissioner thus argues that "[i]n light of this rather benign record, the ALJ reasonably concluded that Plaintiff retained sufficient vision to view a computer monitor; determine the size and shape of small objects such as

nuts, bolts and screws; and avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar and approaching people or vehicles." *Id.* (citing (R. 38)).

The Commissioner accuses Plaintiff of glossing over her "normal or near-normal corrected vision throughout the relevant period" in favor of "emphasiz[ing] that she was diagnosed with visual impairments and cit[ing] to a litany of records indicating she complained of blurry vision and received treatment." *Id.* at 4–5. The Commissioner points out that a diagnosis, by itself, is not indicative of a claimant's ability to work and here, "the ALJ acknowledged that Plaintiff received treatment for her vision problems, but reasonably concluded that Plaintiff's objective testing indicated she retained sufficient visual acuity to handle the modest requirements of her past office job ([R]. 38)." *Id.* at 5.

In her reply, Mompie contends that the Commissioner repeats the same "erroneous approach" as the ALJ by focusing on visual acuity. [ECF No. 21, p. 2]. She notes that her "[past] work required the ability to 'frequently view a computer monitor' ([R]. 77), and therefore necessitated an ability to effectively view and use such a monitor for [six] hours in an [eight]-hour workday." *Id.* Thus, Plaintiff argues that "[w]hile a person who displays near-normal or even excellent visual acuity on an eye chart test may be able to look at a computer monitor and use its display for brief periods, this says nothing about the person's ability to perform such tasks for [six] hours of an [eight]-hour day." *Id.* at 3.

Mompie cites to numerous symptoms -- including worsening eye pain, persistent

floaters and spots, vision disturbances associated with ocular migraine, fluctuating distorted vision, macular edema, vision problems associated with tiredness, burning and strain when using a computer, and flashes occurring and increasing in both eyes -- which she asserts are "highly relevant and undermines the assumption that [she] could look at a computer screen for [six] hours per workday." *Id.* at 3–4.

But the ALJ's decision shows that she considered all of the relevant evidence in assessing Plaintiff's visual impairments, not just her visual acuity. For instance, although the ALJ noted that, after her cataract surgeries, Plaintiff's visual acuity "quickly improved and was 20/40 without correction in both eyes" on November 3, 2021, she also noted that on the same date (November 3, 2021), Plaintiff's "diabetic retinopathy and macular edema were described as mild." (R. 37). She also considered Plaintiff's ocular migraines, noting that "no medical expert has opined that this condition results in an inability to perform work-related activities." (R. 38).

Although these discussions took place in the section of the decision discussing the listings, the Court must consider the record **as a whole** and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports the ALJ's findings of fact. *Powers*, 738 F.2d at 1152 (emphasis added); *see also Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, . . . we consider the

16

ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.").

Other parts of the ALJ's decision show that she considered Plaintiff's subjective eye-related complaints but did not fully credit them:[6]

> **The claimant reported on 08/20/2020 that she suffers from ocular migraines**. She also reported sharp pains in her legs and feet from diabetes. **She stated she can see with glasses, and she can drive, prepare meals, and perform housework**. She alleged that she sleeps only four to five hours per night and naps during the day (Ex. 4E). [She] reported on 10/09/2020 that she was going to church before COVID and said that she gets along well with her family members. She also acknowledged that she takes no medication for any mental impairment, does not see a mental health professional, and has not been hospitalized for any mental condition (Ex. 6E). **The claimant testified she stopped working due to worsening vision, but she said she has a driver's license and continues to drive during the day. She reported that she has not looked at a computer screen since having cataracts removed, and she no longer reads because her eyes tire, and her vision is blurred. She stated, however, that she has a Facebook account.**
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> ***
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the evidence. **Although she alleges she cannot see sufficiently to read, perform crafts, or look at a computer screen, records consistently document near normal**

---

[6]     For the reasons discussed below, the ALJ's decision not to fully credit Plaintiff's testimony is supported by substantial evidence.

> **vision with glasses** (Ex. 5F, 9F, 10F, 11F, 12F, 15F, 16F, 19F, 20F).
> Furthermore, **the claimant continued to work at a job requiring at least
> frequent near visual acuity for more than one year after her visual
> impairments were diagnosed** (Ex. 5F, 9F, 10F, 11F). In spite of her reports
> of diabetic neuropathy, the claimant consistently exhibits a normal gait,
> station and coordination (Ex. 8F, 13F, 14F, 21F).

(R. 39; 41 (emphasis added)).

The ALJ also discussed, at length, Plaintiff's medical records, including records

from eye doctors which discuss macular edema, diabetic retinopathy, blurry vision, eye

pain, floaters, and streaky vision:

> An eye examination on 07/12/2018 showed scattered dot/blot hemorrhages
> and scattered microaneurysms. The claimant was diagnosed with **clinically
> significant macular edema** of the left eye and **borderline significant
> macular edema** of the right eye. In addition, she had **moderate non-
> proliferative diabetic retinopathy (NPDR)** and non-significant cataracts
> (Ex. 5F at p. 16). W. Scott Thompson M.D. injected her eyes with Lucentis
> and performed a focal laser treatment on 07/19/2018 (Ex. 5F at p. 12). On
> 09/14/2018, the claimant's visual acuity was 20/25 in the right eye and 20/20
> in the left eye. Dr. Thompson noted that the **macular edema** was **persistent
> but mild** in the right eye but had improved in the left eye (Ex. 5F at p. 9).
> On 02/07/2019, he assessed an **ocular migraine**, but he noted continued
> **improvement of the macular edema**. He continued to urge the claimant to
> control her diabetes for NPDR (Ex. 5F at p. 6). The claimant continued to
> report **mild blurred vision** on 05/08/2019, and Dr. Thompson
> recommended further monitoring (Ex. 5F at p. 2).

> The claimant also was treated by ophthalmologist Alan Mendelsohn M.D.
> from 03/05/2018 for cataracts, drusen, and **diabetic retinopathy** (Ex. 9F at
> p. 50). He noted on 07/09/2018 that the claimant had developed **severe pre-
> proliferative diabetic retinopathy** (Ex. 9F at p. 30). On 07/26/2019, Dr.
> Mendelsohn noted the claimant's cataracts were clinically significant, and
> he referred her for a retinal consultation (Ex. 9F at p. 9). Adiel Smith M.D.
> administered Eylea injections on 08/13/2019 and 09/06/2019 (Ex. 11F at pp.
> 14, 18). On 09/20/2019, he noted that **the claimant's retinopathy was
> improving**, and he recommended cataract surgery (Ex. 10F at p. 9). On

10/07/2019, the claimant reported a **sharp pain in her left eye** after having an Eylea injection a few days earlier; but her eye examination was unchanged, and Sapir Karli M.D. recommended two large computer screens at work with anti-glare monitors (Ex. 10F at p. 6). The claimant reported **fewer headaches** to Dr. Smith on 10/09/2019 (Ex. 11F at p. 11), and he continued to administer Eylea injections through 01/17/2020, during which time the claimant continued to report improved vision (Ex. 11F at p. 5). On 12/27/2019, Dr. Mendelsohn continued to note that the claimant was not checking her blood sugar, and her last A1c was "very high." The claimant reported she had not received Eylea injections in a month because she no longer could afford them (Ex. 12F at p. 2), but Dr. Smith resumed the injections on 09/22/2020 (Ex. 15F at p. 12) and continued them through 05/12/2021 (Ex. 19F). The claimant reported to Dr. Mendelsohn on 11/18/2020 that she was having **difficulty seeing street signs**, but he noted that her visual acuity was 20/20 in the right eye and 20/25 in the left eye (Ex. 15F at p. 4). On 03/04/2021, Dr. Mendelsohn recommended cataract surgery (Ex. 16F at p. 30). On 06/11/2021, the claimant reported to Dr. Mendelsohn that the **floaters in her left eye were improving** but said that her vision was worse at night. He continued to recommend cataract surgery (Ex. 16F at p. 6). The claimant underwent cataract surgery on 09/27/2021 on the left eye and reported **blurred vision** on 09/28/2021 (Ex. 20F at p. 21). The cataract was removed from her right eye on 10/11/2021 (Ex. 20F at p. 9), and she continued to report **blurred, streaky vision** through 11/03/2021, but her lenses were in good position. Her visual acuity was 20/40 in each eye, and Dr. Mendelsohn described her **retinopathy and macular edema as mild** (Ex. 20F at p. 3).

(R. 39–40 (emphasis added)).

Thus, this is not an instance where the ALJ focused on Plaintiff's visual acuity while ignoring *other* symptoms which could result in visual impairment. The ALJ considered *both* Plaintiff's visual acuity and other symptoms including macular edema, diabetic retinopathy, blurry vision, eye pain, floaters, and streaky vision. Because the ALJ accounted for all of Plaintiff's impairments (including visual impairments), Plaintiff's RFC is supported by substantial evidence and the ALJ did not commit reversible error in

assessing Plaintiff's visual impairments.

**B.     *The ALJ's Alleged Failure to Obtain Plaintiff's Waiver of Her Right to Counsel***

Next, Mompie argues that the ALJ should have questioned her more thoroughly concerning her right to representation and this failure prejudiced Plaintiff because the ALJ failed to develop the record. [ECF No. 18, pp. 12–16].

She states that the ALJ only briefly addressed this matter at the administrative hearing:

> The ALJ's only comment about representation was her leading question - "So, you're prepared to proceed today without a representative?" to which Ms. Mompie responded, tentatively, "Yes, I believe so." ([R]. 52-53). The ALJ then switched topics, stating: "Okay. Okay. All right. And the record also shows that you were provided a copy of the complete record." ([R]. 53). Ms. Mompie responded "Yes." *Id.*

*Id.* at 12. The ALJ did not provide any information to Plaintiff about her right to representation and did not obtain a written waiver. *Id.* at 13.

Mompie further argues that "[e]ven assuming [the] brief colloquy [at the administrative hearing] satisfied the ALJ's obligations to notify a claimant of her right to representation, [Plaintiff] was prejudiced by her lack of counsel, warranting remand." *Id.* Specifically, Plaintiff contends that the ALJ's alleged failure to properly advise her of her right to representation caused her prejudice:

> because the ALJ failed in her duty to develop the record by not ordering: (1) an ophthalmology exam as recommended by Dr. Fernandez, the consultative examiner; and (2) a psychological examination, as indicated by the numerous references to anxiety and depression in the record. The

record indicated gaps in the medical evidence and the need for both evaluations.

*Id.* at 13–14.

She states that the ALJ's failure to order an ophthalmology consultative examination and a consultative psychological examination was not harmless error because if Plaintiff was limited to occasional viewing of a computer screen, she would not be able to perform her past work. *Id.* at 17. Thus, "the proper evaluation of Ms. Mompie's visual impairment is an outcome[-]determinative issue." *Id.* She further states that "the psychiatric evidence submitted to the Appeals Council confirms that [she] was prejudiced by the ALJ's failure to order a consultative psychological examination" because this "would have confirmed her severe anxiety and depression and her inability to perform the mental demands of her highly stressful past work as an SSA service representative." *Id.*

Mompie notes that she "submitted new evidence to the Appeals Council documenting psychiatric treatment which began 11 days after the ALJ's decision was issued on March 7, 2022[ ] ([R]. 12-27, 28-42)" but "[t]he Appeals Council found that the new psychiatric evidence, dated from March 18, 2022[ ] through June 9, 2022, '[did] not relate to the period at issue' and '[did] not affect the decision about whether [she] [was] disabled beginning on or before March 7, 2022.' ([R]. 4)." *Id.* at 16.

Mompie summarizes this new evidence and argues that "the new evidence . . . documents that [her] depression and anxiety [were], indeed, severe impairments which

were present during the relevant time period, contrary to the findings of the ALJ and the Appeals Council, and that the development of the record with a consultative psychological examination was, in fact, warranted in this case." *Id.* at 16–19.

She further notes that in her December 18, 2020 request for reconsideration, she reported that "[i]ncoherent thoughts and irrational behavior (anxiety and depression, prolong[ed] grief and severe sleep apnea) interfere[d] with [her] day[-]to[-]day performance," but "the ALJ took no action to fully develop the record in the year that lapsed until the December 2021 hearing." *Id.* at 19.

The Commissioner states the record reflects Plaintiff's knowing and voluntary waiver of her right to counsel. [ECF No. 19, p. 5]. The Commissioner notes that there is no suggestion in the record that Plaintiff was incapable of understanding the waiver or that she expressed any misunderstanding concerning the nature of the administrative proceeding. *Id.*

The Commissioner points out that the SSA mailed two letters and a pamphlet to Plaintiff informing her of her right to representation. *Id.* (citing (R. 134–36; 142–46)). The Commissioner further notes that "Plaintiff certified she was aware of her right to an attorney and that the hearing office would assist her with locating a representative." *Id.* at 5–6 (citing (R. 133)). She further notes that during the hearing before the ALJ, Plaintiff provided complete and coherent testimony and appeared to understand the administrative process such that her waiver of counsel was knowing and intelligent. *Id.*

22

at 6.

The Commissioner also disputes Mompie's prejudice claim, noting that "the ALJ did, in fact, order a consultative examination, at which Plaintiff demonstrated normal vision and mental status" and that "[t]he record is replete with eye examinations and objective testing showing normal vision." *Id.* (citing R. 868, 873, 887, 901, 904-10, 917-19, 957, 961, 968, 984, 989, 993).

In her reply, Plaintiff maintains that the ALJ "fail[ed] to make the requisite inquiries and create a record indicating a knowing and voluntary waiver took place." [ECF No. 21, p. 5]. She maintains that she suffered prejudice because "development of the record with both [an] ophthalmological and [a] psychological consultative examination is warranted." *Id.* at 6.

At the outset, the Undersigned finds that Plaintiff was adequately advised of her right to representation and knowingly waived that right. Mompie cites *Brown v. Shalala*, 44 F.3d 931 (11th Cir. 1995) in support of her argument that the ALJ failed to adequately advise her of her right to representation. [ECF No. 18, p. 13]. But *Brown* is distinguishable from the instant case.

In *Brown*, the plaintiff was advised of her right to representation in a written notice of hearing. 44 F.3d at 935. Nonetheless, the hearing transcript in *Brown* "plainly reveal[ed] that **[the plaintiff] was confused by the ALJ's questions concerning representation[,]**" and "[a]lthough she eventually responded in the affirmative when asked whether she

desired to proceed alone, her earlier statements reflect[ed] that **she wanted the assistance of her former supervisor**, who told her to go on without him." *Id.* (emphasis added). Thus, the Eleventh Circuit concluded that "[n]othing in her testimony evince[d] an understanding that she had other options which were either explored or rejected." *Id.*

Here, Plaintiff received two written notices and a pamphlet concerning her right to representation. (R. 134–36; 142–46). She also stated in her request for a hearing before an ALJ that she understood she had a right to be represented and if needed, she would be provided with a list of legal referral and service organizations to help her find a representative (R. 133). Moreover, unlike the plaintiff in *Brown*, Mompie expressed no confusion concerning her right to representation or a desire to have a representative at the administrative hearing before the ALJ.

At the administrative hearing, the ALJ asked Plaintiff if she had been advised of her right to representation and if she understood those rights. Plaintiff answered the ALJ's inquiry in the affirmative:

> ALJ: . . . **I note that you are not represented by an attorney or other qualified individual, but the record shows that you were advised of your rights to representation, and that you understood those rights**. Is that correct?
>
> CLMT: **Yes**.
>
> ALJ: **Okay. So, you're prepared to proceed today without a representative?**
>
> CLMT: **Yes, I believe so.**

(R. 52 (emphasis added)).

The record reflects a knowing and intelligent waiver. Here, Plaintiff received several written notices from the SSA explaining her right to representation. At the start of the administrative hearing and in response to questions from the ALJ, Plaintiff verbally affirmed that she had been advised of her right to representation, understood that right, and was prepared to proceed without representation.

Additionally, Plaintiff has failed to show prejudice stemming from a purportedly inadequately developed record. "It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). As the Eleventh Circuit explained in *Brown*,

> When the right to representation has not been waived . . . the [ALJ]'s obligation to develop a full and fair record rises to a special duty. This special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel. In carrying out this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Smith* [*v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982)] (citations omitted). "Under this standard, we are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." *Clark* [*v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981)]. Nevertheless, **there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record**. *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir.1985).

44 F.3d at 934–35 (emphasis added).

A remand is appropriate where "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* at 935. But, an ALJ is "not required to order a

consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty*, 245 F.3d at 1281).

Plaintiff argues that the ALJ should have ordered ophthalmological and psychological consultative examinations. [ECF No. 21, p. 6]. "Ordering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)).

Here, the ALJ discussed at length Plaintiff's medical records, her medications, her symptoms, and her testimony in her decision. The Undersigned finds that the record contained sufficient evidence to permit the ALJ to make an informed decision. As such, the ALJ did not err by failing to order ophthalmological and/or mental consultative examinations. *See Nation v. Barnhart*, 153 F. App'x 597, 598 (11th Cir. 2005) ("The ALJ is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is not necessary for an informed decision.").

Moreover, Plaintiff has not shown that the aforementioned "new evidence" warrants a remand. The Appeals Council considered the new evidence and determined it was not related to the relevant time period:

You submitted Medical Records from Ventre Medical Associates, dated March 18, 2022 through June 9, 2022, (17 pages). The Administrative Law Judge decided your case through March 7, 2022. **This additional evidence does not relate to the period at issue**. **Therefore, it does not affect the decision about whether you were disabled beginning on or before March 7, 2022**.

(R. 4 (emphasis added)).

To the extent the new evidence could possibly relate back to the relevant time period, Plaintiff fails to show a reasonable probability the new evidence would change the outcome of the decision. *See Everett v. Kijakazi*, No. 22-CV-20640, 2023 WL 2472186, at *6 (S.D. Fla. Mar. 13, 2023) ("Evidence is material if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)).

Records from Ventre Medical Associates state that Plaintiff reported a history of anxiety and depression since she was in her 20s and stated that her father's death in 2017 due to colon cancer worsened her mental state. [ECF No. 18, p. 17]. The new evidence also shows that Plaintiff was prescribed Wellbutrin XL, Cymbalta, Xanax, and Prozac. *Id.* at 18. It further shows that her score on a Patient Health Questionnaire-9 indicated major depression. *Id.* (citing R. 14).

At the administrative hearing before the ALJ, Plaintiff cited stressors in her life (including her father's illness) which worsened her anxiety and depression. (R. 68 ("In 2006 I started caring for my ill father. So, 2017, he passed away. But at that time, we were also going through a foreclosure and I had to apply for bankruptcy. And I believe at that

time, everything spiked up. Like I said, **my anxiety and my overall condition took, you know, for worse**." (emphasis added))).

The ALJ noted Plaintiff's prolonged grief in her decision. (R. 36 ("The claimant completed a disability report on 12/21/2020, where she said she had suffered increasing irrational behavior since August 2020 due to anxiety, depression, and prolonged grief.")). She also considered Plaintiff's report on the same day of having "trouble with incoherent thoughts since August 2020," but observed "[n]o provider documented such complaints, and Dr. Fernandez noted an intact mini-mental examination." (R. 37).

"[E]vidence is more likely to be considered material when it evinces an impairment that the ALJ did not consider." *Everett*, 2023 WL 2472186, at *6. Here, the ALJ's decision (including her discussion of Plaintiff's medical records and symptoms) shows that she considered Plaintiff's anxiety and depression "singly and in combination" but determined that they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." (R. 36).

In sum, the record reflects that Mompie knowingly and intelligently waived her right to representation. Plaintiff has also failed to show prejudice. She has not shown a reasonable probability that the new evidence would change the outcome of the ALJ's decision or that the ALJ erred in failing to order additional consultative examinations.

C.      *Plaintiff's Subjective Testimony*

Mompie also argues that the ALJ's assessment of her subjective testimony was not supported by substantial evidence because the ALJ failed to address the regulatory factors. [ECF No. 18, p. 20]. These factors include: "the claimant's daily activities; the type, dosage, and effectiveness of medication; the claimant's treatment; and any conflicts between the claimant's statements and the evidence." *Id.* (quoting *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582, at *2 (11th Cir. May 16, 2022)).

Plaintiff argues that the instant case is similar to *Martinez* because, "instead of addressing the regulatory factors, the ALJ 'merely summarized portions of the medical evidence' which actually confirmed the severity of her visual impairments and was 'not necessarily inconsistent' with her testimony." *Id.* at 21 (quoting *Martinez*, 2022 WL 1531582, at *2; (R. 38–41)).

Plaintiff also argues that "the fact that Ms. Mompie continued working at her job, which she loved, as long as possible, supports her disability claim rather than detracting from it, as the ALJ claimed." *Id.* at 21–22. She points to her "solid work history, with 20 years of work at the [SSA] with earnings ranging from $30,000 to $50,000 annually for the last 16 years of her employment" *Id.* at 22 (citing (R. 187)). She contends that this work history entitles her to substantial credibility. *Id.* & n.7 (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983); *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001); *Dobrowolsky*

*v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980)).

The Commissioner states that "[t]he ALJ considered Plaintiff's testimony that she could not work due to her vision problems, but **reasonably found that Plaintiff's record of normal vision did not support this claim**." [ECF No. 19, p. 7 (emphasis added)]. She states that "contrary to Plaintiff's argument, the ALJ did not just recite the medical record in evaluating Plaintiff's allegations" but "reviewed the totality of the record and explained why Plaintiff's testimony that her vision prevented the performance of basic tasks was not consistent with the record." *Id.* The Commissioner further states that there is no requirement in the Eleventh Circuit that the ALJ expressly discuss a claimant's work history and that here, "the ALJ was clearly aware of Plaintiff's work history, given the extensive discussion of [it] at the hearing." *Id.* at 7–8.

In her reply, Plaintiff reiterates that the ALJ erred in discounting her testimony [ECF No. 21, pp. 6–7]. Citing *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021), she argues that "[a]n individual's ability to perform limited activities in the home environment at her own pace as she is able does not translate into the ability to perform sustained work activities, eight hours a day, five days a week, in a work environment." *Id.* at 7. She further states that the ALJ's failure to consider her long work history "is another point [ ] demonstrat[ing] how the ALJ failed to fairly analyze and consider all of the evidence of record." *Id.*

Evaluating a claimant's subjective testimony is a two-part inquiry:

"Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. . . . Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit [his] ability to perform work-related activities." *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018). An ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [his] symptoms affect [him]. [A claimant's] symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529(c)(4).

*Gleicher v. Kijakazi*, No. 21-CV-60014-RS, 2022 WL 4596706, at *3 (S.D. Fla. Sept. 30, 2022) (alterations in original).

"Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Venturella v. Kijakazi*, No. 21-CV-61838, 2022 WL 4110699, at *6 (S.D. Fla. Aug. 18, 2022), *report and recommendation adopted*, No. 21-61838-CIV, 2022 WL 4110339 (S.D. Fla. Sept. 8, 2022) (quoting *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. 2021)). But, so long as it is supported by substantial evidence, "[the Eleventh Circuit] will not disturb a properly articulated credibility finding[.]" *Belser v. Soc. Sec. Admin., Comm'r*, No. 20-12121, 2021 WL 6116639, at *6 (11th Cir. Dec. 27, 2021).

Here, the ALJ found that while "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Mompie's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 39). The ALJ found that Plaintiff's statements were inconsistent with the evidence:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the evidence. Although she alleges she cannot see sufficiently to read, perform crafts, or look at a computer screen, **records consistently document near normal vision with glasses** (Ex. 5F, 9F, 10F, 11F, 12F, 15F, 16F, 19F, 20F). Furthermore, **the claimant continued to work at a job requiring at least frequent near visual acuity for more than one year after her visual impairments were diagnosed** (Ex. 5F, 9F, 10F, 11F). **In spite of her reports of diabetic neuropathy, the claimant consistently exhibits a normal gait, station and coordination** (Ex. 8F, 13F, 14F, 21F).

(R. 41 (emphasis added)).

An ALJ must articulate explicit and adequate reasons for discrediting a claimant's subjective testimony. *See Lugo v. Kijakazi*, No. 21-CV-60019, 2023 WL 3259437, at *12 (S.D. Fla. Mar. 27, 2023), *report and recommendation adopted*, No. 21-60019-CIV, 2023 WL 3249398 (S.D. Fla. May 4, 2023) ("When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate 'explicit and adequate' reasons for doing so, or 'the implication must be so clear as to amount to a specific credibility finding.'" (quoting *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995)). Here, the ALJ listed several reasons why she could not fully credit Plaintiff's testimony. (R. 41). The ALJ

included multiple citations to the record which undercut the extent of Plaintiff's visual impairment. *Id.* Therefore, substantial evidence supports the ALJ's assessment of Plaintiff's testimony.

Moreover, Plaintiff's argument regarding the ALJ's purported failure to consider her "solid work history, with 20 years of work at the [SSA]" [ECF No. 18, p. 22] is not persuasive. In *Gleicher v. Kijakazi*, this Court rejected a similar claim "that the ALJ failed to consider [Gleicher]'s 'honorable work history.'" 2022 WL 16829691, at *8.This Court noted that "[a]lthough the ALJ's [d]ecision did not reference [Gleicher]'s work history, [Gleicher] testified about his 20-year employment history in IT support and his recent unsuccessful attempt to work, which the ALJ considered" and "[t]here [was] no rigid requirement that the ALJ specifically refer to every piece of evidence in his [d]ecision, as long as the ALJ's [d]ecision is not a broad rejection of the evidence." *Id.*

Similarly here, during the administrative hearing, Mompie testified to working 20 years for the SSA as a contract representative. (R. 56). As noted in *Gleicher*, the ALJ is not required to discuss every piece of evidence so long as her decision demonstrates that she considered the record as a whole. 2022 WL 16829691, at *8.

In sum, the ALJ's assessment of Mompie's subjective testimony is supported by substantial evidence and is not grounds for remand. The ALJ clearly articulated her specific reasons for discounting Mompie's testimony and those reasons are supported by the record evidence.

### D.       The ALJ's Failure to Include Mental Limitations in Plaintiff's RFC

Lastly, Mompie contends that the ALJ erred when she failed to "reconcile the finding that [she] had mild limitations in the domain of concentrating, persisting, or maintaining pace with the RFC assessment finding no mental limitations." [ECF No. 18, p. 21]. She argues that the instant case is analogous to *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019), where the ALJ failed to consider the plaintiff's mental impairments in the RFC. *Id.* at 24–25. Mompie states that, as in *Schink*, the ALJ here "(1) failed to find any mental limitations in the RFC assessment; and (2) failed to provide any 'real assessment' of how [her] depression and anxiety impacted her ability to work." (R. 38–41).

Thus, Plaintiff argues that the ALJ erred in "failing to provide any explanation for not including any mental limitations in the RFC assessment as required." [ECF No. 18, p. 26]. She states that "[e]ven a mild mental limitation in concentrating, persisting or maintaining pace could conflict with the satisfactory performance of the essential job duties of skilled work." *Id.* at 29.

The Commissioner notes that "Plaintiff did not allege mental health issues when she applied for benefits and never sought treatment during the relevant period." [ECF No. 19, p. 9]. Although Plaintiff submitted records post-dating the ALJ's decision, the Commissioner maintains that these records are not relevant to Plaintiff's condition during the adjudication period. *Id.* at 9, n.2. Moreover, the Commissioner argues that merely

34

because the ALJ found mild limitations in concentration, persistence, and pace at step two of the sequential process, does not mean the ALJ was required to include mental limitations in Plaintiff's RFC. *Id.*

In her reply, Plaintiff accuses the Commissioner of mischaracterizing her argument. [ECF No. 21, p. 8]. She states that "[r]ather than relying on a rule that automatically mandates inclusion of RFC limitations corresponding to mild limitations," she challenges "the ALJ's failure to *reconcile* the finding that she has contention/persistence/pace limitations with the capacity described in the RFC finding by performing the more detailed assessment required by applicable authority." *Id.* (internal quotations omitted; emphasis added). "[H]aving credited certain limitations, the ALJ was bound to reconcile them with the RFC finding, particularly in light of the nature of Ms. Mompie's past skilled work, even the mild limitations at issue could conflict with the satisfactory performance of the essential job duties of skilled work." *Id.* (internal quotation marks omitted).

Mompie further argues that the Commissioner's vague reference to the ALJ's discussion of nonexertional limitations fails to adequately address this argument:

> The Commissioner also states that "[t]he ALJ discussed the possibility of nonexertional limitations" -- yet she does not quote from this alleged discussion or specify what was allegedly discussed. [ ]. This is an insufficient counterargument. Indeed, by referring vaguely to a "possibility of nonexertional limitations" the Commissioner does not even claim that the ALJ discussed Ms. Mompie's concentration, persistence, or pace limitations in the RFC assessment.

*Id.* at 9.

At the outset, Plaintiff's reliance on *Schink* is misplaced. In *Schink*, the Eleventh Circuit determined that the plaintiff's mostly solitary daily activities -- "watching television, walking the dog, and cooking" -- "[did] not discount the treating physicians' opinions that *Schink* suffered significantly from mental impairments, particularly when he interacted with others." 935 F.3d at 1264.

Here, the ALJ did not ignore Mompie's mental impairments. She explained in her decision that "[Mompie]'s medically determinable mental impairments of anxiety and depression, considered singly and in combination, [did] not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe." (R. 36).

In discussing the paragraph B criteria, the ALJ noted that Plaintiff "alleged no limitations from any mental impairment in her adult disability report (Ex. 3E), and she reported to the agency that she does not see a mental health professional or take any psychiatric medication." (R. 36). Moreover, "[a]lthough [Plaintiff] testified that her stress and anxiety have decreased since she stopped working, the claimant said she stopped working due to worsening vision." *Id.* The ALJ also noted that "providers consistently documented normal mood, affect and behavior." *Id.*

The ALJ found that Plaintiff had mild limitation in the area of concentrating, persisting or maintaining pace. (R. 36). However, she also noted that Plaintiff

alleged no difficulty concentrating or paying attention on 10/09/2020 and stated she is able to drive, manage her finances, and goes out alone (Ex. 6E) **She reported on 12/21/2020, however, that she has had trouble with incoherent thoughts since August 2020 (Ex. 9E). No provider documented such complaints, and Dr. Fernandez noted an intact mini-mental examination. In addition, he opined the claimant is able to sustain work-related concentration and persistence (Ex. 14F).**

*Id.* at 36–37 (emphasis added).

The ALJ did not err in not including any mental limitations in Mompie's RFC. The record evidence supports the ALJ's finding that Mompie's mental impairments were nonsevere and did not cause more than minimal limitation in her ability to perform basic mental work activities.

Moreover, "ALJs are not obligated to include mental limitations in the RFC merely because they have found 'mild' limitations under the [Psychiatric Review Technique Form] and paragraph B criteria." *Hartz v. Comm'r of Soc. Sec.*, No. 21-CV-14418, 2023 WL 3871799, at *3 (S.D. Fla. May 17, 2023), *report and recommendation adopted*, No. 21-CV-14418, 2023 WL 3868200 (S.D. Fla. June 7, 2023); *McKenzie v. Kijakazi*, No. 2:22-CV-763-KCD, 2023 WL 6388057, at *5 (M.D. Fla. Oct. 2, 2023) ("[T]he ALJ found only mild impairments. As such, he was not required to include any mental limitations in the RFC."); *Martin v. Comm'r of Soc. Sec.*, No. 8:22-CV-1435-JSS, 2023 WL 3644419, at *9 (M.D. Fla. May 25, 2023) ("[C]ontrary to [the] [p]laintiff's contention, the ALJ was not required to include a mental limitation in the RFC simply because he identified 'mild' mental limitations in the PRT assessment.").

## VI.     Conclusion

Because none of the issues raised by Mompie warrant a remand, the Undersigned **respectfully recommends** that the District Court **deny** Mompie's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter final judgment in favor of the Commissioner.

## VII.    Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on January 31, 2024.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to</u>:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record